[Civ. No. 8626. Second Appellate District, Division Two.—October 13, 1934.]

MAMIE E. SCRIMSHER et al., Respondents, v. RELIANCE ROCK COMPANY (a Corporation), Appellant.

Bauer, MacDonald, Schultheis & Pettit, Fred E. Pettit, Jr., and A. S. Halsted, Jr., for Appellant.

F. Ray Risdon, J. L. Kearney and Jas. D. Randles for Respondent.

PACHT, J., *pro tem.*—Appellant, Reliance Rock Company, seeks reversal of a judgment of fifteen thousand ($15,000) dollars and costs, based upon the verdict of a jury rendered herein against it and in favor of Mamie Scrimsher, widow, and Winfred Austin Scrimsher, minor child of William Austin Scrimsher, deceased.

The action, which is one for damages for the death of decedent, caused by the claimed negligence of the appellant, was twice tried. Originally commenced September 28, 1927, against Reliance Rock Company, appellant here, and Robert C. Barnes, as defendants, the cause first proceeded to trial before a court and jury on December 12, 1928; at the close of plaintiffs' case on December 13, 1928, both defendants moved for an order of nonsuit, which, after argument, was taken under submission by the trial judge. On the following day, the 14th of December, 1928, the court announced its decision in the following language:

" . . . I am more firmly convinced than ever that this motion will have to be granted. . . . The motion will be granted as to the Reliance Rock Company. You may proceed with the case against the defendant Barnes."

Thereupon the trial proceeded as against the defendant Barnes alone, resulting in a verdict against him, from which

no appeal has ever been taken and which has since become final.

The minutes of the court as they concern the proceedings on the 14th of December, 1928, and the point now raised by appellant, read as follows:

"Trial resumed with all parties and jury present as before. A. G. Miner, Reporter. Bernard A. Hodges is sworn and testifies for defendant. Motion for non-suit is by the court granted as to Reliance Rock Company. Motion for a non-suit as to Robert C. Barnes is by the court denied. Defendants rest."

Subsequently, and on January 2, 1929, a formal "Judgment of Non-suit" was submitted for signature by the appellant and was signed by the trial judge and docketed on the following day. This "Judgment of Non-suit" reads as follows:

"Evidence both oral and documentary having been received on the part of plaintiffs, said plaintiffs having rested their case; thereupon attorneys for defendant Reliance Rock Company, a corporation, having duly and regularly made a motion for a nonsuit, and said motion having been duly considered by the court, and the court, by minute order made and entered in the records of said court on the 14th day of December, 1928, having granted said motion of nonsuit as to said defendant Reliance Rock Company, a corporation, and thereafter a verdict having been rendered by the jury in favor of the plaintiffs and against defendant Robert C. Barnes;

"Now, therefore, in confirmation of said minute order of court granting a non-suit as to defendant Reliance Rock Company, a corporation,

"It is hereby ordered, adjudged and decreed that plaintiffs, and each of them, take nothing by their complaint as against defendant Reliance Rock Company, a corporation, and that as to said defendant the said complaint be dismissed."

In due time, plaintiffs (respondents here) moved for a new trial as against said Reliance Rock Company, their notice of motion reading as follows:

"To the above named defendant, Reliance Rock Company, a corporation, and Slauson and Ackerman, it attorneys of record:

"You will please take notice that the plaintiffs in the above entitled action intend to and will move this court to vacate and set aside the decision and judgment of the court heretofore rendered in the above entitled matter, decreeing a non-suit as to the plaintiffs and decreeing that plaintiffs take nothing by their complaint as against the defendant Reliance Rock Company, a corporation, which decision and judgment was signed by Hon. John L. Fleming, Judge presiding in said matter, on the 2nd day of January, 1929 and entered and docketed January 31st, 1929 in Book 705, Page 6 of Judgments, in the office of the County Clerk of the County of Los Angeles, and to vacate said judgment and to grant plaintiffs a new trial herein on the following grounds, etc.''

The motion for a new trial having, after argument, been denied, plaintiff (respondents herein) on the 18th of March, 1929, served and filed their notice of appeal, reading as follows:

"You and each of you will please take notice that the plaintiffs in the above entitled action hereby appeal to the District Court of Appeal of the State of California, Second Appellate District, from the judgment in the above entitled matter decreeing a non-suit as to the plaintiffs, and decreeing that said plaintiffs take nothing by their complaint against defendant, Reliance Rock Company, said judgment being rendered on the 2nd day of January, 1929, and entered and docketed on January 31, 1929, in Book 705, Page 6 of Judgments, in the office of the County Clerk of Los Angeles County; also from the order denying plaintiff's motion for a new trial, made on the 7th day of March, 1929.''

While pending before the District Court of Appeal, the case was briefed by counsel for the appellant and respondents and in due time a decision was handed down reversing the judgment of nonsuit, the District Court of Appeal holding that there was sufficient evidence introduced on behalf of the plaintiffs to warrant the submission of the cause to the jury. (See *Scrimsher* v. *Reliance Rock Co.*, 116 Cal. App. 500 [2 Pac. (2d) 862].)

After the *remittitur* came down the cause was, on the motion of the plaintiffs, reset for trial before a jury, for the twentieth day of April, 1932. On the 26th of March, 1932, appellant Reliance Rock Company served upon plain-

tiffs and filed its notice of motion returnable April 1, 1932, to vacate the order setting the case for trial and to terminate all further proceedings as against said appellant upon the ground, in substance, that the order of nonsuit made and entered the fourteenth day of December, 1928, was the definite and final act upon the part of the trial court concluding the case as to the Reliance Rock Company, and was the only appealable order; that the subsequent "Judgment of Non-suit" signed the 2d of January, 1929, from which an appeal was taken by plaintiffs (appellants in the first appeal), was entirely superfluous and of no effect and that all subsequent proceedings in the District Court of Appeal, including the *remittitur* reversing the case and sending it back for retrial, were void and of no effect whatever. This motion was, after argument, denied.

Thereafter, and before the second trial of the case commenced, appellant petitioned the District Court of Appeal for a writ of *mandamus* requiring the superior court to vacate its order denying appellant's motion for a vacation of the setting and to terminate all further proceedings in the case; likewise another petition for an alternative writ of prohibition to restrain the superior court from retrying the case because of lack of jurisdiction to so do. These petitions were denied without opinion.

The second trial then commenced on April 21, 1932, but before a jury was impaneled appellant entered its formal objection to the trial of the action, assigning in support thereof the same grounds stated in its motion of the 1st of April, 1932. This objection was overruled and the case was then tried, resulting in a verdict for the plaintiffs and against the appellant herein as before noted.

At the close of the evidence and before its submission to the jury, appellant moved for an instructed verdict in its favor consistent with the minute order judgment of nonsuit of December 14, 1928, and upon return of the verdict and before the jury was dismissed, and prior to the filing, docketing or entry of the verdict, the appellant moved for a judgment in its favor, notwithstanding the verdict which motions were based *inter alia* upon the ground that the court had no jurisdiction to enter any judgment inconsistent with the minute order judgment of nonsuit of December 14, 1928. Both of said motions were denied.

On the twenty-eighth day of April, 1932, the defendant Reliance Rock Company served and filed its notice of intention to move for a new trial, and among other grounds upon which the motion would be based, specified the following:

"6. Total lack of jurisdiction in the court to retry the case (as it did the 21st and 22nd days of April, 1932) with minute order judgment of nonsuit duly entered in the minutes of the court of the 14th day of December, 1928, standing in full effect and undisturbed by any subsequent proceedings either in connection with motion for a new trial and/or appeal."

The motion was presented to the court on the day set and the court thereupon took the matter under submission.

On the day its notice of intention to move for a new trial was filed, the defendant also filed in the District Court of Appeal for the Second Appellate District a petition for rehearing in the mandate and prohibition proceedings above referred to (Civ. Nos. 8370 and 8371), this for the reason that although the case had then already been tried the prayers of the petitions in those matters sought general relief and upon reconsideration the court might have issued writs in such form as would have stayed the enforcement of the judgment entered on the verdict on April 23, 1932. On the sixth day of May, 1932, both petitions for rehearing were denied.

Thereafter, and on the thirteenth day of May, 1932, petitions were filed in the Supreme Court for a hearing by that court after decision by the District Court of Appeal, together with a further petition for writ of prohibition. (L. A. Nos. 13687, 13688 and 13689.)

On June 2d the petition in Los Angeles No. 13689 and on June 4th the petitions in Los Angeles Nos. 13687 and 13688 were denied by the Supreme Court.

On June 23, 1932, appellant's motion for a new trial was denied, whereupon it appealed to this court from the judgment so rendered against it, bringing up for review the various intermediate orders referred to in the foregoing recital.

Three principal grounds are assigned by the appellant for a reversal of the judgment which, in substance, may be stated as follows:

A. The first appeal having been taken by plaintiffs (appellants in the first case) from the formal judgment of nonsuit instead of from the minute order of nonsuit, no jurisdictional power to act in the matter was conferred upon the appellate court and as a result thereof, its proceedings being without effect in law, the trial court had no jurisdiction to retry the case and enter another and different judgment with the minute order judgment of nonsuit standing of record and as a matter of law undisturbed.

B. That as a matter of law, the evidence produced upon the second trial of the case fails to show any negligence on the part of the defendant as a result of which the decedent came to his death, and therefore this being the state of the record, it was error for the trial court to deny appellant's motion for judgment notwithstanding the verdict; likewise that decedent was guilty of contributory negligence barring a recovery.

C. The jury having been called upon to determine as a matter of fact whether the defendant Robert C. Barnes (through whose claimed negligence decedent was injured and met his death) was the servant or employee of the defendant Reliance Rock Company, his general master, or the servant of Oswald Brothers, the special master, it was error for the trial court to exclude certain proffered testimony as to whether the methods used in the work were those of the defendant Reliance Rock Company, or Oswald Brothers.

If the first point made by appellant has merit, it is necessarily determinative of the appeal and of the entire litigation. If we so conclude, it will render unnecessary a discussion of the remaining two points. On the other hand, if we conclude that the notice of appeal served by the plaintiff (appellant in the first case) was addressed to the proper order of nonsuit, and that the District Court of Appeal did acquire jurisdiction of the first appeal, we will then consider and pass upon the other claims of error urged by appellant herein.

■ (1) Undoubtedly the rule is that where the minute order of nonsuit is the final and definite disposition of the cause, the time within which an appeal must be taken commences to run from the date of the minute order and not from the date of the signing of a subsequent formal judg-

ment of dismissal. (*Tromanhauser* v. *Grisemer*, 123 Cal. App. 153 [11 Pac. (2d) 32]; *Bengel* v. *Traeger*, 100 Cal. App. 526 [280 Pac. 538]; *Burks* v. *Bronson*, 58 Cal. App. 143 [207 Pac. 1018]; *Brown* v. *Sterling Furniture Co.*, 175 Cal. 563 [166 Pac. 322]; *Commins* v. *Guaranty Oil Co.*, 29 Cal. App. 139 [154 Pac. 882]; *Henry* v. *Lingsweiler*, 81 Cal. App. 142 [253 Pac. 357]; sec. 581, Code Civ. Proc.; *Matthai* v. *Kennedy*, 148 Cal. 699 [84 Pac. 37]; *Lewis* v. *Hammond Lumber Co.*, 114 Cal. App. 390 [300 Pac. 49]; *Finch* v. *Eckstrom*, 115 Cal. App. 381 [1 Pac. (2d) 516]; *Burks* v. *Bronson*, 58 Cal. App. 143 [207 Pac. 1018]; *Pacific Paving Co.* v. *Vizelich*, 141 Cal. 4 [74 Pac. 352]; *Clark* v. *Superior Court*, 37 Cal. App. 732 [174 Pac. 681]; *Darlington* v. *Butler*, 3 Cal. App. 448 [86 Pac. 194].)

But where the minute order was intended by the trial court *and must have been understood by the parties* to be, and served merely as memoranda affording data from which a proper final judgment might thereafter be drafted *disposing of the entire cause*, the appeal lies from the formal judgment and the time within which it may be taken begins to run from the date of its signing. (*Skaggs* v. *Taylor*, 77 Cal. App. 519 [247 Pac. 218]; *Ferris* v. *Baker*, 127 Cal. 520 [59 Pac. 937]; *Larson* v. *Larson*, 15 Cal. App. 531 [115 Pac. 340]; *Estate of Yale*, 208 Cal. 102 [280 Pac. 358]; *Gullick* v. *Interstate Drilling Co.*, 100 Cal. App. 243 [279 Pac. 828]; *Gullick* v. *Interstate Drilling Co.*, 111 Cal. App. 263 [295 Pac. 549]; *Graf* v. *Montecito Water Co.*, 126 Cal. App. 178 [14 Pac. (2d) 336].)

That the court upon the first trial intended to sign some sort of formal judgment of nonsuit or dismissal is evidenced by its language when it announced its decision on the motion for a nonsuit. And that counsel for appellant (respondent in the first appeal) regarded the minute order of December 14, 1928, as mere memoranda, affording data from which a proper final judgment might thereafter be drafted and presented for signature, is shown by the recitals in the "Judgment of Non-Suit". On the fourteenth day of December, 1928, when the minute order was made, the entire case had not yet been disposed of; the cause was still on trial as against the co-defendant Barnes. It was evidently the intention of the court and counsel to delay the making of a final definite and formal judgment

of nonsuit until after the verdict of the jury had been rendered as to the remaining defendant. Accordingly, the formal judgment of nonsuit reads:

"Now, therefore, in confirmation of said minute order of court granting non-suit as to defendant Reliance Rock Company, a corporation, it is hereby ordered, adjudged and decreed that plaintiffs and each of them take nothing by their complaint as against defendant, Reliance Rock Company, a corporation, and that as to said defendant the said complaint be dismissed."

If the minute order of December 14th was intended to be the final and definite disposition of the case as to the defendant Reliance Rock Company, why was it necessary to make a confirmatory order? In passing upon a similar question in *Gullick* v. *Interstate Drilling Co., supra,* Mr. Justice Ira L. Thompson used language which has particular significance in its application to the case now under review:

"In view of the fact that the appeal was well within the sixty-day period and also that the respondents could not possibly have had any doubt concerning the intention of the appellant to have reviewed the action of the court in granting a nonsuit, the dismissal of the present appeal would be the result of an insistence upon a pure technicality without either rhyme or reason. It would amount to reliance upon the shadow and not the substance. The law, however, does not require us to so act. It is to be observed that in *Bengel* v. *Traeger,* 100 Cal. App. 526 [280 Pac. 538], the sixty-day period had not only run when counted from the entry of the order of non-suit on October 30, 1928, but also when reckoned from the entry of the so-called formal judgment of January 3d, before the notice of appeal was filed on March 26, 1929. So, too, in *Burks* v. *Bronson,* 58 Cal. App. 143 [207 Pac. 1018], the second judgment was entered a month after the order of nonsuit was 'entered on the minutes and noted in the register of actions. by the Clerk'. In *Estate of Yale,* 208 Cal. 102 [280 Pac. 358, 359], the Supreme Court said: 'Without in any manner attempting to minimize the force of the authorities cited and relied upon by the respondents in support of their motion, it is our conclusion, founded on a reading of the several minute orders and of that portion of the formal judgment hereinabove quoted, that the minute orders were intended

by the trial court, and must have been understood by the parties, to be and to serve merely as memoranda affording data from which a proper final judgment might thereafter be drafted disposing of the entire cause. In such a case an appeal is held to lie from the formal judgment. (*Ferris* v. *Baker*, 127 Cal. 520, 523, 524 [59 Pac. 937]; *Larson* v. *Larson*, 15 Cal. App. 531, 536 [115 Pac. 340].)' In the case of *Ferris* v. *Baker*, just cited, it is said: 'The order in this case was a mere narration by the clerk as follows: "Defendants move the court for nonsuit on the grounds stated. Said motion is argued and thereupon granted." The order did not show what were the grounds of the motion; it did not purport to be a dismissal of the action nor a judgment of any kind, and was, in fact, but a memorandum affording data from which a judgment or proper order might be drafted—similar to the minute made when a decision is announced directing that judgment pass for one party or the other.' The identical observations may with all propriety be made concerning the minute entry here in question. In *Larson* v. *Larson, supra*, we also find appropriate language as follows: 'We are inclined to think, however, that the first order was merely "a memorandum affording data from which a judgment might be drafted", and that therefore the order of September 22d was the proper one from which to take the appeal. The Supreme Court so held in a similar case. (*Ferris* v. *Baker*, 127 Cal. 520 [59 Pac. 937].) The appeal was in time even if the order of nonsuit was entered as claimed by respondent. The error complained of, even if it existed, could not possibly have misled anyone, for the notice of appeal identified the order appealed from with reasonable certainty. That is all that is required. (Code Civ. Proc., sec. 941b.) Such errors have always been disregarded. (See *Weyl* v. *Sonoma Valley Ry. Co.*, 69 Cal. 202 [10 Pac. 510]; *Anderson* v. *Goff*, 72 Cal. 65 [1 Am. St. Rep. 34, 13 Pac. 73]; *Paul* v. *Cragnaz*, 25 Nev. 293 [47 L. R. A. 540, 57 Pac. 857, 60 Pac. 983]; *British Bark Latona* v. *McAllep*, 3 Wash. Ter. 332 [19 Pac. 131].)' Our conclusion is that an appeal has been duly taken."

Again, in *Graf* v. *Montecito Water Co., supra*, which appears to be the last appellate court decision upon this question, Justice Craig in passing upon a motion to dismiss

an appeal taken from a formal judgment of nonsuit instead of the minute order previously made, concluded that the appeal was effectively taken and denied the motion to dismiss.

Our conclusion therefore is that the first appeal was properly taken; that the District Court of Appeal had acquired jurisdiction of the cause and that the *remittitur* sending the case back for retrial was a binding disposition of the appeal.

■ (2) Moreover, while no motion to dismiss the first appeal was ever made, nor was the question of jurisdiction raised at any stage of the pendency of the case in the District Court of Appeal, the opinion of Mr. Justice Houser clearly shows that the District Court was well aware of the state of the record and passed on the appeal as if it had been properly taken and from the proper judgment of nonsuit. It will be noted that in making a recital of the facts in the case, and the manner in which it found its way to the Court of Appeal, Justice Houser says: "At the close of the evidence presented by the plaintiffs an order of nonsuit was entered in favor of Reliance Rock Co.; and it is from the resultant judgment that the appeal herein is presented."

It is plain to us that the decision of the first appeal is *res judicata* on the question of jurisdiction subsequently and now raised by appellant. (See *White* v. *Fresno Nat. Bank,* 98 Cal., at p. 167 [32 Pac. 979] ; *Clary* v. *Hoagland,* 6 Cal. 685.) To hold otherwise on the record here presented would be lending encouragement to dilatory and highly technical procedure subversive of an effective disposition of an appeal fully briefed and decided on the merits. It would give encouragement to a respondent to await the event of an appeal by arguing the substantive questions involved and if dissatisfied with the decision of the court, await the resetting of the case for trial and then, for the first time, raise the question of the jurisdiction of the court of review to entertain the appeal in the first instance. This would certainly give rise to a most chaotic procedure and constitute a stumbling block to the orderly and speedy administration of justice. It "would be the result of an insistence upon a pure technicality without either rhyme or reason. It would amount to reliance upon the shadow and

not the substance.'' It would wholly defeat in this case, upon highly technical grounds, a recovery of damages after two trials, and the lapse of nearly seven years from the date of the commencement of the case to date of this decision. We are satisfied that the law never intended such a final disposition of an otherwise meritorious cause.

To properly pass upon the second point made by appellant it is necessary to make a brief statement of the essential facts surrounding the happening of the accident.

Oswald Brothers were paving contractors who, to facilitate their operations, maintained near the scene of the accident, bunkers for the mixing of rock and gravel which was dumped into waiting trucks. At a railroad siding parallel to the bunkers were located seven gondola cars loaded with rock and gravel. This material was removed from the cars into the bunkers by means of a steam shovel owned by appellant, and operated by the defendant Barnes, who, at the time of the accident in question, was in the general employ of the appellant—the shovel and services of Barnes being rented out by appellant to Oswald Brothers at $5 per hour.

The accident occurred between 1 and 2 P. M. of June 25, 1927; decedent, for a year and a half to two years prior thereto, had been employed by Oswald Brothers, as its bunker man; his duties were to see (testimony of appellant's witness Spilmeyer):

'' . . . that the materials were properly unloaded, and the trucks were properly loaded, and the operations went along uniformly as to speed; no delays any place.

''To see that the cars were spotted properly when the switch engine brought them in, spotted properly for unloading; and see that the entire operation of unloading went through properly.'' (Rep. Trans., pp. 86, 87.)

''It was his duty to see that he had material in the bunkers for the operations to be carried along; if he was short of rock or sand, he would tell the operator he had to have more rock or more sand. If the stock pile was down, he would have to get cars up there, keep operations going.

'' . . . I talked to Mr. Barnes and Mr. Scrimsher together, and I told Mr. Barnes then that whatever Mr.

Scrimsher asked for, that I would expect him to give it to him." (Rep. Trans., pp. 144 and 145.)

"I instructed Mr. Scrimsher, I expected him to keep operations going, and not to delay the mixer or the trucks, and to ascertain why the trouble is, and remove it. I expected him to keep them going. He was in charge at that point over the operation." (Rep. Trans., p. 146.)

Barnes, the shovel operator, who the jury under appropriate instructions found to be the employee of the Reliance Rock Company, came on the job on the 24th of June, the day before the accident, and one Kimball, who assisted in the operations and whose particular duty it was to spot the gondola cars, first came to work about 10 A. M. on the day of the accident.

The manner in which the accident happened is best described by Kimball, who, in substance, testified as follows:

"There was about seven cars in the string, and just the time before his death we had to move the cars to get out the gravel and sand in the cars—in the full cars." (Rep. Trans., p. 92.)

"I was standing on one end of the car applying the brakes."

"He (Scrimsher) was applying the brakes on the other car on the other end, a car length from me." (Rep. Trans., p. 93.)

The gondola cars were moved as follows:

"The Brown hoist shovel was attached to the cars by means of a cable. This cable attached to the Brown hoist shovel pulled the cars down to the position they wanted them to be . . . the position that would be the handiest for the shovel, or the easiest for the shovel to get the gravel or sand out of the cars with . . . and into the bunkers."

"Q. Now, what means, if any, was used to stop the cars when they reached the proper place? A. He used all the hand brakes on the cars—on the rock gondolas. Q. And who attended to those hand brakes? A. The swamp man. Q. And this particular man who was the swamp man? A. I was." (Rep. Trans., pp. 94, 95.)

"Well about ten minutes before the fatality I had hooked the cable onto the car, as explained to me to hook the cable onto the car and moved them on down.

"And I had hooked that on and gone up on the car to be ready to apply the hand-brake. While I was hooking the cable on, or while I was crawling upon the car, I also saw Mr. Scrimsher walking over to the car. Whether he got on the car—I did not see him get on the car, but I saw him walking to the car." (Rep. Trans., pp. 95, 96 and 98.)

"Q. Now, after you got on the car to apply the brake, just state what happened, did the cars move ahead, or tell us? A. As I climbed on the car the shovel started up towing the cars on down by means of this cable connected with the Brown hoist—towed the cars down, and at a certain position we applied the hand-brakes. That position was told to me by the operator of the shovel. Q. He told you when to apply the hand-brakes? A. No, he signaled, that he wanted them stopped there. Q. And you did apply the hand-brakes? A. I applied the hand-brakes. Q. And the cars came to a stop? A. That I don't know, because as I looked up I am not sure whether the cars were at a complete stop or not. Q. Now, you were on the car. Where was Scrimsher when you saw him, where was he in relation to the car? A. On the brake platform of the car in front of me. Q. On the brake platform of the car in front of you? A. On the near end, on the east end of the car in front of me. Q. And just state now— I believe you came down to where you saw Mr. Scrimsher standing, and just before the shovel struck him, is that correct? A. No, I saw him as he was hit. Q. Just as he was hit? A. Yes, sir. Q. And what happened? A. Well, he was swept off the car as he was hit. The shovel was reversed, but the back flop of the shovel, or clam-shell was reversed, and the back flip of the clam-shell is what caused the death of Mr. Scrimsher, and I was just climbing off the car as the shovel struck Mr. Scrimsher, to get down to unhook the cable."

Barnes testified that he swung the bucket or steam shovel around at full speed and did not look to see if anyone was on the car or not before he swung the boom around (Rep. Trans., pp. 34 and 36) although from his cab he had a full view of the gondola cars (Rep. Trans., pp. 36, 37, 41 and 42).

■ Appellant contends that Barnes had no reason to anticipate the presence of Scrimsher on the gondola cars, and that it was contributory negligence as a matter of law,

for him to go upon the cars without notifying Barnes of his desire so to do.

(3) Scrimsher's duties in and about the gondola cars and the prompt and efficient dispatch of the gravel and rock therefrom into the bunkers was explained to Barnes by the superintendent, Spilmeyer (Rep. Trans., p. 144), and must have been fully known to him as a result of their joint operations from the time Barnes came on the job on the 24th of June; he (Scrimsher) no doubt, spotted the cars and braked them before Kimball came to work at 10 A. M. of the morning of the accident, and the nature of the operations were such that it should have been apparent to any prudent and careful man, operating such a dangerous instrumentality as the steam shovel in question, that occasions might arise from time to time for the presence of Scrimsher on the gondola cars for the purpose of spotting them and assisting in the braking.

It was plainly negligence for Barnes to swing the bucket around over the cars at full speed while the braking operations were being performed without looking to see whether anyone was on the cars or not. Barnes owed the duty both to Kimball and Scrimsher to carefully operate the steam shovel to avoid striking either of them with it while they were engaged in the performance of their duties on the gondola cars. He cannot exculpate himself by the assertion that no one told him and that he did not know that Scrimsher at the very time of the accident would be on the cars; a reasonably prudent operator should have, and would have known that Scrimsher, in the efficient and proper performance of his duties, would during the course of the operations, find it necessary, in order to keep the removal of the rock and gravel speeded up, to go on or near the gondolas.

(4) The question of Barnes' knowledge of Scrimsher's presence on the gondolas at the time of the accident, or of his previous practice in going upon them was by the learned trial judge squarely submitted to the jury under proper and appropriate instructions, and its implied findings against the appellant are amply supported by evidence. It was for the jury, as the trier of the facts, to determine whether or not, under the facts and circumstances as they existed while the work was being carried on, Barnes should have

anticipated the presence of Scrimsher on the gondola cars, and whether or not it was negligence for him to swing his shovel without taking any observations as to Scrimsher's presence about the cars. He had a full view from his position in the cab of anyone going to and from the cars; Kimball saw Scrimsher walking over to the car and the jury very properly concluded that Barnes' failure to see him was due to his failure to take the ordinary and reasonable precautions of looking before swinging the boom around. Upon well-settled principles we are not inclined to disturb the verdict of the jury, based as it is upon disputed questions of fact.

(5) Error is assigned by appellant to a ruling of the trial court sustaining an objection to a question propounded to the appellant's witness Hodges as follows:

"Q. Do you know whether the Reliance Rock Company in unloading cars, moved them by pulling them with a cable attached to the Brown hoist crane or any other crane?

"Mr. Randles: Object to as incompetent, irrelevant and immaterial, not bearing upon the issues in this case.

"The Court: Objection sustained." (Rep. Trans., p. 127).

The interrogatory was addressed to the issue of whether or not Barnes was at the time of the accident in the employ of the appellant, or in the special employ of Oswald Brothers. Appellant was evidently seeking to prove that the method used in moving the gravel cars by means of a cable instead of a pinch bar was the peculiar device or method of Oswald Brothers and not that of Reliance Rock Company. It was already in evidence that the steam shovel was the property of appellant; that it, together with the services of Barnes, the operator, were hired by appellant to Oswald Brothers at $5 per hour; that Reliance Rock Company paid Barnes' wages and that Oswald Brothers gave no instructions to and exercised no control over Barnes as to the manner or method in which he should operate the steam shovel.

What methods were used by appellant in moving cars generally, or being unloaded at other bunkers than the one in this case, and under conditions not shown to be the same or similar to those existing at the Oswald bunkers at the scene of the accident, were manifestly immaterial on the

issue of whether or not Oswald Brothers exercised any control over the manner and method in which Barnes operated the steam shovel in question in this case. The witness Spilmeyer, likewise called by appellant, and testifying on this point, said:

"Q. By the way, was it the general practice of Oswald Brothers in moving cars to hitch a cable on the hoist or crane, and then they move the crane along and pull the cars that way? A. It depends on the conditions existing at the bunkers. Q. Well, in this particular case, was it in accordance with your instructions to move the cars that way? A. I had no instructions there. Q. Well, did you give any? A. We used pinch bars, caterpillars, whatever we had available, and the shovel itself. We used all three on that one particular job." (Rep. Trans., lines 2 to 13, p. 106.)

Moreover, the same question was propounded to appellant's witness Ritler, who answered it before the court had an opportunity to pass upon an objection to the question, and whose answer was not stricken out, but remains in the record: "Q. Are you familiar, Mr. Ritler, with the methods used by the Reliance Rock Company in moving cars which are being unloaded at the bunkers? Did they use cables at any time? To which we object, on the ground that it is incompetent, irrelevant and immaterial. A. No, sir."

It thus appears that the testimony unsuccessfully sought to be elicited from the witness Hodges was, in fact, given by the defendant's witness Ritler, and the benefit of it received by the jury. We hold, therefore, that the objection to the question asked of the witness Hodges was properly sustained and that in any event the error (if such it be) was, in view of the state of the record, so inconsequential as not to affect the result arrived at by the jury. In addition, the court's charge, to which no exception is taken, upon the issue of whether Barnes was the employee or servant of Oswald Brothers or appellant, gave to the jury full and adequate guidance for the determination of the question.

We have carefully examined the entire record and find no error warranting a reversal.

The judgment is affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 10, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 10, 1934.