[Civ. No. 9399.   Third Dist.   Oct. 3, 1958.]

NATHAN M. DICKER et al., Respondents, v. HARVEY WEST, Appellant.

Forrest E. Macomber and Gordan J. Aulik for Appellant.

Brandenburger, White & Dillon, E. R. Vaughn and Lewis, Lewis & Lewis for Respondents.

WARNE, J. pro tem.*—This is an appeal from a money judgment in favor of respondents in an action brought to recover the balance of a deposit from which rent was paid under a lease, and also (1) an appeal from the judgment insofar as it denies appellant any relief on his cross-complaint to recover rent from and after the destruction of the premises to the end of the term provided in said lease, and, (2) damages for respondents' alleged breach of a covenant of the lease to deliver possession of the leased premises in the same condition as when they were received, subject to ordinary and reasonable use and wear, though destroyed by fire without fault of the tenant.

On May 29, 1950, appellant leased a sawmill and machinery and equipment to the deceased Ben Caplan for a term commencing on the date of the lease and terminating at the close of the 1952 logging season. The lease provided:

"As rental for said Mill, machinery and equipment, Caplan shall pay unto West the sum of Three and no/100 ($3.00) Dollars per thousand board feet for all lumber cut by him in said Mill, . . . Caplan shall, upon the execution of the Agreement of Lease, deposit the sum of Ten Thousand and no/100 ($10,000.00) Dollars with West, which Ten Thousand Dollars ($10,000.00) shall apply on the rental of said sawmill, as herein set forth. As soon as said sawyer's lists aggregate the sum of Five Thousand and no/100 ($5,000.00) Dollars, calculated at the rate of Three ($3.00) Dollars per thousand board feet, Caplan shall immediately and forthwith deposit another Five Thousand and no/100 ($5,000.00) Dollars with West, to the end that West shall have a deposit of Ten Thousand and no/100 ($10,000.00) Dollars in advance on account of the rental due on said sawmill."

Pursuant to the terms of the lease, Caplan deposited $10,000 with West and took possession of the demised premises. Thereafter, the lessee, Caplan, with West's consent, assigned the lease to Louis Novick, now deceased, who operated the mill under the fictitious name of Lake Mill Lumber Company until it was destroyed by fire on August 17, 1951. Subsequently, in an action to which appellant was not a party, the Superior Court in and for the County of Sacra-

*Assigned by Chairman of Judicial Council.

mento entered judgment decreeing the proportionate interests of the respondents in the assets of the Lake Mill Lumber Company, including any claims against appellant arising out of his lease to the deceased, Ben Caplan. Thereafter, respondents brought this action to recover $3,971.26, the balance of the deposit of the prepaid rent at the time of the destruction of the mill and by cross-complaint appellant sought to recover damages for respondents' breach of the covenant of the lease to deliver possession of the property in the same condition as it was when received. The court found that the covenant did not make the lessee an insurer against destruction by fire which was caused other than by want of his ordinary care. The court further found that the lease was terminated by operation of law on August 17, 1951, that is, as of the date of the fire. Judgment in the amount of $3,971.26 was entered in favor of respondents, and appellant was denied recovery on his cross-complaint.

Appellant takes the position that the $10,000 deposit required by the terms of the lease was prepaid rent, and that the trial court erred in allowing the respondents to recover the proportionate unused portion thereof.

■ As stated in *Friedman* v. *Isenbruck,* 111 Cal.App.2d 326, 335 [244 P.2d 718]:

"It is a harsh but well settled rule that, in the absence of a qualifying provision in the lease, rent will not be apportioned, that is, where rent is paid in advance, a lawful surrender or termination during the prepaid period does not entitle the lessee to a proportional rebate. ■ Rent does not accrue from day to day, but accrues on the day it is payable. [Citing cases.] ■ This rule applies where the premises have been destroyed and the lease is thus terminated. (*C. M. Staub Shoe Co.* v. *Byrne,* 169 Cal. 122 [145 P. 1032].)"

We do not agree with appellant's contention that the trial court erred in not applying the above rule to the instant case.

■ It is our opinion that the $10,000 advance deposit required by the terms of the lease was not contemplated as prepaid rent but only as a fund deposited for the security of the lessor out of which the rent was to be paid as it accrued from day to day. Hence the rule that, in the absence of a qualifying provision in the lease, rent paid in advance will not be apportioned upon surrender or termination of the lease is not applicable to this case. Here, the amount of rent was to be computed on the daily output of the mill. ■ It was to be computed by West from the sawyer's lists of the lumber

cut which Caplan was required to furnish him each day. It was computed at the rate of $3.00 per thousand board feet of lumber cut in the mill. It was West's duty to compute the amount of the rent and invoice Caplan for the amount thereon on the first and fifteenth of each month. The deposit was applied against the accrued rent and when the deposit was depleted to the sum of $5,000, Caplan was required to deposit an additional $5,000 so as to bring it up to the original $10,000. Since we hold that these moneys were not intended as prepaid rent, but only as security for the payment of the rent, West was obligated to refund any unused portion thereof when no further rent could accrue, either by virtue of the expiration of the term of the lease or destruction of the premises.

Nor do we feel that the following provision in the lease in any way militates against our conclusion that the $10,000 was intended as surety for the lessor and not as prepaid rent:

"It is Agreed that during the logging seasons of 1950, 1951 and 1952, Caplan shall cut not less than two hundred fifty thousand (250,000) board feet of timber per week in said Mill, or, in the event Caplan fails to do so, he shall pay West the difference between the number of board feet of timber actually cut by him in the said Mill and said minimum of 250,00 board feet, at the rate set forth in said Lease."

This was merely a covenant whereby the lessee obligated himself to cut 250,000 board feet of lumber per week and in the event of his failure to do so, lessee was to pay West the difference between the cut and the minimum of 250,000 board feet at the rate of $3.00 per thousand. This provision was obviously written into the lease to assure prompt performance by the lessee. The mill having been destroyed by fire, it was no longer possible for respondents to comply with the terms thereof. The total amount of rent and the requirement for additional deposits of $5,000 depended solely upon the amount of lumber cut, except in the event that lessees fail to cut the required weekly 250,000 board feet of timber. Of course, this requirement did not contemplate the destruction of the mill.

The lease also provides:

"Said Caplan shall be entitled to the possession of said Mill from the time of the execution of this Lease until the close of the logging season of 1952, at which time Caplan shall deliver up possession of said Mill, mill property, all property used in connection therewith, and all machinery,

equipment and tools in accordance with the inventory attached hereto, in the same condition as when he received the same, subject to ordinary and reasonable use and wear and tear, and if he fails to do so, he shall pay West the reasonable value of any personal property not delivered up by him as aforesaid and shall pay West for any property damaged by him or delivered up in a damaged or excessively worn condition.''

Appellant contends that, under this provision, Caplan not only agreed to keep the premises in good condition and repair, but also agreed to pay West the reasonable value of any of the leased property which he did not deliver up to West at the end of the term. He urges that this provision, in effect, made the lessee an insurer of the property. There is no merit in such contention.

It is stated in *Friedman* v. *Isenbruck, supra,* at page 334:

''While it is true that at common law and in some states an unqualified covenant to repair was interpreted to impose upon the lessee the duty to rebuild a structure which was destroyed without the fault of the lessee (see annotations, 45 A.L.R. 12, 39; 106 A.L.R. 1358, 1364), and while that was perhaps the early rule in California (*Polack* v. *Pioche,* 35 Cal. 416 [95 Am.Dec. 115]), this state no longer follows that harsh and unrealistic doctrine. In *Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565 [194 P. 1024], the Polack case was distinguished and the more enlightened and modern rule adopted that a covenant to repair does not include an obligation to rebuild a structure destroyed through no fault of the lessee. There the structures involved were destroyed by an accidental fire. The court stated (p. 576) : 'To repair means to mend an old thing, not to make a new thing; to restore to a sound state something which has become partially dilapidated, not to create something which has no existence. [Citing a case.] When we speak of repairing a thing, the very expression presupposes a thing in existence to be repaired. If a workman undertakes to repair an article, he obviously contemplates making whole an existing article and not the manufacture of something new.' After elaborating on these arguments at some length, the court concluded (p. 578) : 'It follows that the agreements to keep the premises in good repair and, at the end of the term, to surrender them in as good condition as they were in at the beginning of or during the term are not, and do not include a covenant to replace a

structure totally destroyed by fire without the fault of the tenant. [Citing cases.]' "

In the instant case, it was alleged in the complaint and admitted by the answer that the mill was totally destroyed by fire. In his cross-complaint, appellant also alleged that the mill was totally destroyed by fire and the court found that the fire was caused other than by want of ordinary care on the part of the lessee. ■ Hence, applying the rule concerning a covenant to repair as stated in the Friedman and Realty & Rebuilding Company cases, it follows by the same token that covenants to deliver up the premises "in the same condition as when he received the same, subject to ordinary and reasonable use and wear and tear" and to pay for property "not delivered up by him" at the end of the term do not contemplate nor include a covenant to pay for a structure wholly destroyed by fire without the fault of the lessee.

Further, insofar as the appellant's cross-complaint is founded on an alleged claim for rent claimed to have accrued to the end of the term provided in the lease, no relief could have been granted him against the estate of Novick since he failed to present such claim to said estate. The trial court found that no claim or claims for cross-complainant's demands as set forth in his cross-complaint were ever presented to Albert L. Wagner as executor of the last will and testament of said decedent, nor was any claim filed with the clerk of the court where said estate is pending administration, or at all.

■ A claim for rent due under a lease is of such a nature that it must be presented for allowance to the decedent's estate. (*Lesser* v. *Pomin*, 3 Cal.App.2d 117 [39 P.2d 451]; also see Executors and Administrators, 20 Cal.Jur.2d, p. 783.)

During the pendency of this appeal a motion was made by the respondent Herbert P. Caplan, as executor of the last will and testament of Ben Caplan, deceased, to dismiss the appeal against said respondent on the ground that no appeal had been taken from the order granting nonsuit in favor of said respondent.

The minute order appearing in the clerk's minutes of May 13, 1957, reads: "Cross-defendant Caplan's motion for nonsuit is granted, and cross-complaint is dismissed."

Section 581c of the Code of Civil Procedure provides in part:

". . . If the motion is granted, unless the court in its order

for judgment of nonsuit otherwise specifies, such judgment operates as an adjudication upon the merits."

Formal entry of such judgment elsewhere than in the minutes is not required and time for the taking of an appeal therefrom begins to run from the date of the minute order. (*Costa* v. *Regents of University of California,* 103 Cal.App.2d 491 [229 P.2d 867].)

In the instant case, the minute order was entered May 13, 1957. The purported appeal filed by appellant herein is "from the Judgment . . . entered . . . on the 10th day of July, 1957, in favor of Plaintiffs in said action, and against said Defendant and Cross-Complainant, and from the whole thereof." It makes no reference to the order granting nonsuit, nor does it purport to appeal from said order. Therefore, since the time within which appellant could have appealed from said order had expired, the purported appeal must be dismissed.

We do not deem it necessary to discuss other points raised upon this appeal.

The purported appeal from the nonsuit as to Caplan is dismissed. The judgment appealed from is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied October 27, 1958, and appellant's petition for a hearing by the Supreme Court was denied November 26, 1958. Schauer, J., was of the opinion that the petition should be granted.