[Civ. No. 18594. First Dist., Div. One. Feb. 16, 1960.]

CITY OF SANTA CRUZ, Plaintiff and Respondent, v. OWEN L. MacGREGOR et al., Defendants; C. L. GIBSON et al., Defendants and Respondents; JAMES SILVANES et al., Appellants.

Lucas, Wyckoff & Miller for Appellants.

George Porter Tobin for Respondents.

DUNIWAY, J.—In this action to condemn real property, we have before us a contest between the owners of one of the parcels (respondents Gibson) and a party claiming to be their lessee (appellant Silvanes) as to the division of the award. There are two appeals, one from an order granting a "non-suit" at the conclusion of Silvanes' evidence, and the second from a judgment thereafter entered, allowing condemnation and an award to the Gibsons and determining that Silvanes take nothing. Motions have been made to dismiss the first appeal because it was not perfected and the second on the ground that the order of "non-suit" was the appealable order or judgment, and that the second appeal was filed too late to be treated as an appeal from that order. Appellant moved for relief from default in perfecting the first appeal in the event that we were to decide that the second appeal should be dismissed. We continued the motions to dismiss until hearing on the merits, but granted appellant relief from default, the transcripts prepared and filed in connection with the second appeal to be the record on the first appeal in the event the second is dismissed.

We conclude, first, that the "non-suit" was not appealable, but that the subsequent judgment was appealable, and second, that the judgment must be reversed.

1. *Which order was appealable?*

The "non-suit" was entered in the minutes on July 21, 1958; notice of motion for new trial was filed July 28 and denied by operation of law 60 days thereafter (September 26); notice of appeal from the "non-suit" was filed October 24. The findings and judgment were filed November 28 and the judgment entered December 1; the second notice of appeal was filed December 8. It was thus timely as to the judgment, but too late as to the "non-suit."

The answer to our question requires some analysis of the nature of the proceedings in condemnation actions. They are

special proceedings governed by sections 1237-1266.2 of the Code of Civil Procedure. Section 1244 prescribes the contents of the complaint, including (subd. 2) "The names of all owners and claimants, of the property, if known, or a statement that they are unknown, who must be styled defendants," and (subd. 5) "A description of each piece of land . . . but the nature or extent of the interests of the defendants in such land need not be set forth . . ." Section 1246 requires that each defendant, "by answer, set forth his estate or interest . . . and the amount, if any, which he claims . . ." It is further provided that one claiming an interest but not named a defendant, may similarly "appear, plead, and defend . . ." Under section 1246.1, the plaintiff is entitled to have the amount of the award for the property first determined, and "thereafter in the same proceeding the respective rights" of the defendants in the award. Section 1247 empowers the court to hear all conflicting claims to the property and to the damages. Section 1248 requires that the court or jury assess "The value of the property . . . and of each and every separate estate or interest therein."

The action differs from the usual one in that each defendant asserts his rights by *answer* (§ 1246, *supra*), rather than cross-complaint. (*Bayle-Lacoste & Co.* v. *Superior Court*, 46 Cal.App.2d 636, 645 [116 P.2d 458].) There is no express requirement that a defendant serve his answer upon his codefendants (but *cf.* Code Civ. Proc., § 465; *Gutleben* v. *Crossley*, 13 Cal.App.2d 249 [56 P.2d 954]), and it is not required that one defendant deny or otherwise plead to the allegations of the answer of a codefendant (*People* v. *Ocean Shore R. R. Co.*, 90 Cal.App.2d 464, 478 [203 P.2d 579]), even though such defendants are, in substance, litigating against each other (*Pomona College* v. *Dunn*, 7 Cal.App.2d 227, 240-241 [46 P.2d 270]; *Anderson* v. *Citizens Sav. etc. Co.*, 185 Cal. 386, 391 [197 P. 113]). Thus there are avoided the numerous cross pleadings and answers thereto that would otherwise be required in what is often a many-sided litigation.

It has been held, however, that a cross-complaint by one defendant against another is permissible (*People* v. *Buellton Development Co.*, 58 Cal.App.2d 178 [136 P.2d 793]).

Under sections 581d and 963, Code of Civil Procedure, a nonsuit, entered in the minutes, is appealable (*Costa* v. *Regents of University of California*, 103 Cal.App.2d 491 [229 P.2d 867]), and this includes a nonsuit on a cross-complaint (*Dicker* v. *West*, 164 Cal.App.2d 55 [330 P.2d 106]), although

Code of Civil Procedure, section 581c, read literally, would indicate that a nonsuit is appropriate only against a plaintiff. ▮ But we think that in this case the order of the court, designated by it a nonsuit, was interlocutory, and not a nonsuit in the usual sense. As we have shown, a condemnation action is a special proceeding, and the code sections contemplate that the rights of the various parties in a particular parcel and in the award for that parcel shall be determined in one judgment. ▮ Piecemeal disposition of litigation is not favored (*Mather* v. *Mather*, 5 Cal.2d 617 [55 P.2d 1174]; *Gombos* v. *Ashe*, 158 Cal.App.2d 517 [322 P.2d 933]). ▮ It should not be allowed in a condemnation case, such as this, where Silvanes, if he has any interest in the property, has rights to litigate against his codefendants, the Gibsons, as to his share of the award, and also against the condemnor, as to the value of the property. (Code Civ. Proc., §§ 1246.1, 1247, 1248.) If the "non-suit" is the final judgment as to Silvanes, then he has no standing to appeal from the judgment, yet it was the judgment that fixed the value of the property. We hold that the judgment, not the "non-suit," was, in this case, the appealable order. (*Cf. Nicholson* v. *Henderson*, 25 Cal.2d 375 [153 P.2d 945]; *Sacramento, Placer & Nevada Railroad Co.* v. *Harlan*, 24 Cal. 334; *People* v. *Superior Court*, 145 Cal.App.2d 683 [303 P.2d 628].) The case of *Keenan* v. *Dean*, 134 Cal.App.2d 189 [285 P.2d 300], cited by respondents, is not in point in this proceeding. It involved an order striking defendant's cross-complaint, which order deprived the superior court of jurisdiction, plaintiff's complaint being within the jurisdiction of the municipal court, and thereby finally terminated the proceeding in the superior court.

As to appellant Lydia Silvanes, however, the situation is different. She was not a party below, and her appeal must be dismissed. (*Rose* v. *Rose*, 110 Cal.App.2d 812 [243 P.2d 578].)

▮ 2. *Did the appellant Silvanes produce sufficient evidence to have sustained a finding in his favor?*

We phrase the question in this way because we are of the opinion that the "non-suit" even though it was not the appealable order, did have legal significance. It was a ruling by the court that, as a matter of law, Silvanes had no interest in the property. The situation here is like that in cases decided before the recent amendments of the Rules on Appeal, where the court's order for a nonsuit contemplated a subsequent formal judgment, and it was that judgment that was the

appealable order, a rule that we hold still applies in this condemnation action. In all such cases, what was reviewed on appeal was the granting of the nonsuit, and the usual rule as to the power of the court in such cases was applied. (See *Scrimsher* v. *Reliance Rock Co.*, 1 Cal.App.2d 382 [36 P.2d 688]; *Perkins* v. *Maiden*, 41 Cal.App.2d 243 [106 P.2d 232]; *Janssen* v. *County of Los Angeles*, 50 Cal.App.2d 45 [123 P.2d 122]; *Security-First Nat. Bank* v. *Cooper*, 62 Cal.App.2d 653, 663 [145 P.2d 722]; *McColgan* v. *Jones, Hubbard etc., Inc.*, 11 Cal.2d 243, 247 [78 P.2d 1010]; and compare *Pessarra* v. *Pessarra*, 80 Cal.App.2d 965, 967 [183 P.2d 279].)

 In passing on a motion for nonsuit, the power of the court is the same whether or not there be a jury; it can grant the motion only if the party against whom the motion is made has produced *no evidence* sufficient to sustain a judgment in his favor. "At this time every inference and presumption and every fact proved must be viewed most favorably in behalf of" Silvanes, and conflicts in the evidence must be disregarded. (*Perkins* v. *Maiden, supra,* 41 Cal.App.2d 243, 246.) The rule is so long and well established as not to require further citation of authority.

 Silvanes was the sole witness. He had been in the tire business for about 10 years, in the city of Felton. Mr. Gibson "had been after" him for years to move his business from Felton to the Gibson property in Santa Cruz, promising that he would construct a building adapted to Silvanes' type of operations.

Under date of October 1, 1954, he made a written agreement with the Gibsons (first parties), as follows:

"THAT WHEREAS, first parties are the owners of certain real property located on Water Street, in the City of Santa Cruz, County of Santa Cruz, State of California, and there now exists on said premises various works of improvement, and

"WHEREAS, it is the plan of first parties to construct a building on the easterly portion of said premises, which building is to be constructed of concrete blocks, and is to be in size 32 x 60 feet, and to be designed for the purpose of conducting therein a tire and tire repair business, and

"WHEREAS, second party is desirous of leasing said building for the purpose of operating thereon a tire and tire repair business when said building is constructed,

"Now THEREFORE IT IS AGREED AS FOLLOWS:

"First parties agree that they will forthwith construct on the easterly portion of their said premises a concrete block building, 32 x 60 feet, designed for the purpose aforesaid; and that they will enter into a lease leasing said building to second party for the period of five years from the date of completion of such construction, at the monthly rental of $150.00 per month, payable in lawful money of the United States of America, with a provision for right of first refusal for another five year period;

"Second party agrees that he will enter into a lease whereby he leases from first parties said building for the period of five years from the date of completion of such construction, at the monthly rental of $150.00 per month, payable in lawful money of the United States of America, with right of first refusal for an additional term of five years."

The agreement was duly signed in duplicate, and delivered. The building was completed some five months after the execution of the agreement. Because of the high danger of combustion, a building in which tire recapping operations are conducted must have a wall of sufficient thickness to contain a fire for four hours.

Gibson caused the building to be constructed with a room which met this specification. Silvanes took possession in March, 1955, and continued in occupancy, paying a monthly rent of $150, until the destruction of the premises by the city necessitated his moving out in September, 1957.

While in the process of moving in, Silvanes discovered that there was no electrical wiring in the building. Apparently, there had been no discussion of this matter prior to that time, and Silvanes was surprised upon discovering this deficiency. Silvanes' business has special electrical requirements. He then discussed the matter with Gibson, and as a result of this discussion, Gibson agreed to pay $150 for "general lighting," and Silvanes agreed to pay the balance of the cost of the wiring, which amounted to $905.93.

Silvanes admitted that he had read the agreement and had retained a copy of it. When asked whether the language of certain portions of that agreement did not have the meaning that he and Gibson were to enter into a lease upon the completion of the building, he responded: "Well, if you write it out now, yes, but at the time this was it. I trusted Mr. Gibson and I thought this was the paper and all I had to do. I never had any more papers presented to me . . . I never give

it any more thought after I signed that paper. . . . I thought that agreement that I signed was the thing. . . . He [Gibson] came to the house and presented me this lease and asked me to sign for it. I thought that was it.''

He also testified, in substance, that the fair market rental value of the Gibson building was $250 per month.

We think that the foregoing evidence would support a finding that Silvanes had a valid lease, with a value of $100 per month in excess of the rent reserved in it. The conduct of the parties was such that, whatever may have been the situation before the building was built and Silvanes took possession, a court could properly find that the written agreement became a binding lease by tacit agreement of the parties when Silvanes moved in.

_Levin_ v. _Saroff,_ 54 Cal.App. 285 [201 P. 961], states (p. 289) : ''To create a valid lease, but few points of mutual agreement are necessary : First, there must be a definite agreement as to the extent and boundary of the property leased; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment.'' These essentials are contained in the present agreement. The property is fixed as a concrete block building, 32 x 60 feet in size and located upon the easterly portion of the Gibsons' premises, the term is five years from the completion of the building, and the rent is to be paid at the rate of $150 monthly.

The Levin agreement is almost identically indefinite as to commencement of the term and location of premises; only the latter point was urged, and the court held that any vagueness was made certain by the tenant's taking possession. An indefinite description of the property may be cured by taking possession. (_Beckett_ v. _City of Paris Dry Goods Co.,_ 14 Cal.2d 633, 637 [96 P.2d 122]; _Guttman_ v. _Berry,_ 83 Cal.App.2d 507, 510 [189 P.2d 41].) The term of a lease is sufficiently certain when it is to commence upon the completion of a building (_Imperial Water Co._ v. _Cameron,_ 67 Cal.App. 591, 595-596 [228 P. 678]) and any uncertainty as to the beginning of the term is removed by the completion of improvements upon which it depends (_Rohan_ v. _Proctor,_ 61 Cal.App. 447, 452 [214 P. 986]).

However, while these elements are necessary to the existence of a lease, they are not sufficient alone to create a lease unless the parties so intend. (_Linnard_ v. _Sonnenschein,_ 94 Cal.App. 729, 732 [272 P. 315].) The question is to be determined by a construction of the instrument in light of the

surrounding circumstances. (*Gavina* v. *Smith*, 25 Cal.2d 501, 503 [154 P.2d 681]; *Pacific Improvement Co.* v. *Jones*, 164 Cal. 260 [128 P. 404]; *Potter* v. *Mercer*, 53 Cal. 667, 671-672; *Smissaert* v. *Chiodo*, 163 Cal.App.2d 827, 830 [330 P.2d 98]; *Regalia* v. *Mariani*, 100 Cal.App. 1 [279 P. 455].)

In this case, Gibson persuaded Silvanes to move his business from Felton where it had been established for some time and built a building especially designed for Silvanes' business. Silvanes moved in, paid rent according to the terms of the agreement, spent considerable money in improving the premises, and continued in possession for 29 months. Neither he nor Gibson ever suggested that any further agreement was needed or contemplated. "[I]f possession be given under the agreement, this will be a circumstance tending to prove that it was intended as a lease *in praesenti.*" (*Potter* v. *Mercer, supra,* 53 Cal. 667, 672.) See also *Pike* v. *Hayden,* 97 Cal.App.2d 606 [218 P.2d 578]; *Gavina* v. *Smith, supra,* 25 Cal.2d 501. The facts in *Linnard* v. *Sonnenschein, supra,* 94 Cal.App. 729; *Store Properties, Inc.* v. *Neal,* 72 Cal.App.2d 112 [164 P.2d 38], and *Warson* v. *Tapley-Arnold Syndicate,* 202 Cal. 656 [262 P. 716], relied on by respondent, were quite different, and fully support the decision in each of those cases that a present lease was not intended.

The Gibsons argue that the agreement is invalid because it violates the rule against perpetuities under the rule laid down by a majority of this court in *Haggerty* v. *City of Oakland,* 161 Cal.App.2d 407 [326 P.2d 957]. The writer of this opinion is in complete agreement with the dissenting opinion of Mr. Justice Bray in that case. However, it would be inappropriate to reconsider the question there decided, because the rule of that case is not applicable here. There the agreement was purely executory. Here the agreement has been executed in part by the completion of the building by the Gibsons and the taking of possession under the agreement by Silvanes. This eliminated the sole ground upon which the Haggerty case is based, that the proposed building might never be built. Under the authorities cited above, the parties can be held, by their actions, to have adopted or ratified the agreement and made it fully effective as a binding lease at the time Silvanes took possession.

It is not disputed that, if Silvanes has a leasehold, his interest is compensable, assuming that it is found to have a value greater than the rent reserved. (*City of Pasadena* v. *Porter,* 201 Cal. 381, 386 [257 P. 526, 53 A.L.R. 679]; *Orton* v.

*Daigler,* 133 Cal.App. 112, 113 [23 P.2d 831].) Any question as to the correctness of the award has been eliminated by stipulation since the appeal was taken.

The appeal from the "non-suit" of July 21, 1958, is dismissed. The motion to dismiss the appeal from the judgment is denied. The judgment entered December 1, 1958, insofar as it determines that all of the award is to be paid to the Gibsons, that the defendant Silvanes take nothing, and that costs are apportioned between the Gibsons and Silvanes, is reversed, Silvanes to recover costs on appeal.

Bray, P. J., and Tobriner, J., concurred.