[Civ. No. 9300. Second Appellate District, Division One.—July 31, 1935.]

COUNTY SANITATION DISTRICT No. 2 OF COUNTY OF LOS ANGELES, Respondent, v. GEORGE G. AVERILL et al., Defendants; ROMAN D. SEPULVEDA, Appellant.

G. W. Nix, Lloyd S. Nix and Joe Raycraft for Appellant.

Hugh Gordon and Hill, Morgan & Bledsoe for Respondent.

SHINN, J., *pro tem.*—This action was brought by County Sanitation District No. 2 of Los Angeles County against the appellant, Roman D. Sepulveda and others, for the purpose of acquiring a right of way for an outfall sewer into the Pacific Ocean. The property of appellant which was taken in the proceeding consists of three parcels, one designated in the record as parcel number three, being a subsurface easement 25 feet wide and 4,102.64 feet long, containing 2.355 acres. Another parcel, designated as parcel number four, consists of a surface easement and a subsurface easement 50 feet by 167 feet, containing 0.192 acres. The surface easement covers lands lying between a bluff and the ocean, and is subject

to right of ingress and egress by appellant Sepulveda. The third parcel, designated as parcel number five, consists of a right of way to be used during the two-year period while the work is under construction, and runs from Pacific Avenue to the surface and subsurface easement number four. The land of appellant, from which the easements in question were taken, consists of 381.35 acres lying along the ocean westerly of Point Fermin and San Pedro Harbor. It has a frontage on the ocean of 4,625 feet. The shore line consists of a rocky beach between the ocean and high bluffs which extend along the entire frontage.

The case was tried before a jury, which awarded appellant certain amounts as the value of the property taken and as damage to the remainder of the land caused by the severance therefrom of parcels three and four and the construction of the improvement in the manner proposed. Defendant Sepulveda appeals from the judgment and complains of alleged errors in excluding evidence tendered by him in support of a specific claim for damages, consisting of the alleged depreciation of the remainder of the land resulting from the construction, maintenance and operation of a public sewer along said rights of way.

The sewer will consist of a concrete tunnel throughout its entire length across appellant's property, with the exception of the portion which crosses the beach, which portion will consist of a cast-iron conduit five feet in diameter, joined on to the end of the tunnel, and laid under the beach and which will enter the ocean twenty feet underground. This open cut will be back-filled with concrete and rock, and no part of the construction, either of the conduit or tunnel, will be visible after the work is completed, and there will be no manholes or other openings upon the surface. The conduit will be extended into and the effluent therefrom will be discharged at the bottom of the ocean at a point 5,000 feet from the shore line.

Defendant offered evidence tending to prove the nature of the effluent to be deposited into the ocean from the sewer, the zone of contamination which would thereby be created, and the direction of the winds, waves, and ocean currents. The purpose of the evidence thus tendered was to support the contention of defendant that the atmosphere around defendant's property would be contaminated with gases

blown in from the ocean, and that the shore line would be defiled with sewage. The court sustained plaintiff's objections and excluded the offered evidence relating to the question of damages. It is necessary, in stating our reasons for the conclusions we have reached as to the correctness of the rulings of the court, to briefly outline the basis of the defendant's right to compensation.

If, under plaintiff's proposed plan, gases would probably escape or sewage would be deposited from the conduit constructed on the easement, to or upon the condemned portion of the land, or the remainder of it, the damage resulting therefrom would be recoverable in the present action. (*City of Pasadena* v. *Stimson*, 91 Cal. 238 [27 Pac. 604]; *Page* v. *Oklahoma City*, 129 Okl. 28 [263 Pac. 448]; *Richardson* v. *City of Centerville*, 137 Iowa, 253 [114 N. W. 1071]; *Lincoln* v. *Commonwealth*, 164 Mass. 368 [41 N. E. 489]; *Cowper Essex* v. *Local Board of Acton*, L. R., 14 App. Cas. 153; *Joplin Cons. Min. Co.* v. *Joplin*, 124 Mo. 129 [27 S. W. 406]; Nichols on Eminent Domain, p. 63; *City of Omaha* v. *Cramer*, 25 Neb. 489 [41 N. W. 295, 13 Am. St. Rep. 504]; *Board of Trade Tel. Co.* v. *Darst*, 192 Ill. 47 [61 N. E. 398, 85 A. L. R. 288]; *Lawlor* v. *Southern Pac. Co.*, 39 Cal. App. 97 [178 Pac. 165]; *Gottschalk* v. *Chicago, B. & Q. R. R. Co.*, 14 Neb. 550 [16 N. W. 475, 17 N. W. 120].) The evidence does not show that such conditions will be created upon the lands of defendant.

The offered evidence related solely to supposed conditions which may result from the action of the winds, ocean currents, and waves upon the sewer effluent after it has been deposited at the bottom of the ocean nearly a mile at sea. While it cannot be doubted that the pollution of the air over defendant's property and the defilement of the beach area, if the same should ever occur, would directly interfere with the use and detract from the value of the property, the questions which would be presented in such a case are not the same as though the damage came directly from the conduit located upon the land.

Appellant advances, as one reason why the court should have received evidence of possible future damage by means of the winds and ocean currents, the rule that all damages sustained by the landowner by reason of the condemnation must be recovered in the action in which the land

is taken. (*East Bay Municipal Utility Dist.* v. *Lodi,* 120 Cal. App. 740, 748 [8 Pac. (2d) 532]; *Sternes* v. *Sutter Butte Canal Co.,* 61 Cal. App. 737 [216 Pac. 66]; Lewis on Eminent Domain, page 1313.) While the soundness of the rule may not be questioned, and while the converse of this rule relied upon by respondent is also well established, to the effect that damages not necessarily included in the issues in the condemnation action may be recovered in a subsequent action, neither rule is helpful in determining what claims are barred and what are not barred by the judgment of condemnation. More pertinent to this question is the statement found in Lewis on Eminent Domain, third edition, volume 2, pages 1451, 1452, in which it is said that ''damages to the remainder by what is done elsewhere than on the part taken are not to be considered. Thus, where parts of certain lots were taken for a railroad and damages assessed therefor, and the parts not taken were damaged by the railroad crossing and obstructing a street upon which the lots abutted at some distance from the lots, it was held that the latter damages were not included in the settlement and an action would lie to recover the same''. To the same effect are *Atchison & N. R. Co.* v. *Boerner,* 45 Neb. 453 [63 N. W. 787]; *Perrine* v. *Pennsylvania Ry. Co.,* 72 N. J. L. 398 [61 Atl. 87]; *Eaton* v. *Boston & Maine R. R. Co.,* 51 N. H. 504 [12 Am. Rep. 147].

■ An owner, whose land is being condemned in part, may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the works are to be constructed or operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the works upon his land alone. (*Keller* v. *Miller,* 63 Colo. 304 [165 Pac. 774], and cases cited; *Oregon-Washington R. & Nav. Co.* v. *Campbell,* 34 Idaho, 601 [202 Pac. 1065]; *Walker* v. *Old Colony etc. R. Co.,* 103 Mass. 10 [4 Am. Rep. 509]; *Campbell* v. *United States,* 266 U. S. 368 [45 Sup. Ct. 115, 69 L. Ed. 328].)

Defendant's objection to the application of this rule is that it would allow plaintiff to do indirectly what it may not do directly and that therefore it makes no difference that the supposed injury to his lands is traceable to conditions arising at some far distant point. The rule as it should be applied here, however, goes to the question of defendant's remedy,

and it is especially applicable to the facts of the present case, as we shall point out.

There is a basic difference between acts committed on the land taken, which affect the owner's interests therein or his remaining lands, and acts committed by authority of the state upon lands or waters owned and controlled by the state and which are held for public use. ■ The oceans and other navigable salt waters under state control may be used for public purposes as the state may see fit, and the owner of abutting lands must suffer without compensation such damage as his lands sustain so long as the acts which are the cause of the damage do not constitute a nuisance. Thus, while riparian owners upon a stream above tide water are entitled to compensation where their lands are damaged by the discharge of sewage into the stream, the same is not true as to riparian owners whose lands are located on a stream where the tide ebbs and flows. (*Seufferle* v. *MacFarland*, 28 App. (D. C.) 94; *Stevens* v. *Paterson & N. R. Co.*, 34 N. J. L. 532 [3 Am. Rep. 269]; *Gray* v. *Paterson*, 60 N. J. Eq. 385 [45 Atl. 995, 83 Am. St. Rep. 642, 48 L. R. A. 717].) In *Sayre Co.* v. *Newark*, 60 N. J. Eq. 361 [45 Atl. 985, 83 Am. St. Rep. 629, 48 L. R. A. 722], a case involving the discharge of sewage in the tide waters of the Passaic River, the court said: ''Indeed, the history of sewers shows that from time immemorial the right to connect them with navigable streams has been regarded as part of the *jus publicum*. . . . And, whenever tidal streams could conveniently be reached, they have been employed as the medium of discharge to the sea. Such a use of public waters must necessarily entail some defilement. The degree of pollution to be permitted is a matter over which the legislature has full power of control. . . . We have, therefore, the city of Newark, a public corporation, executing within the bounds of its discretion and with care, a franchise lawfully granted to it by the legislature for a public purpose, but thereby producing consequential damage to the complainants. Such damage is a loss for which there is no remedy. It is a burden to which the sufferers must submit, as members of the community from which they receive compensatory benefits.''

In *City of Hampton* v. *Watson*, 119 Va. 95 [89 S. E. 81, L. R. A. 1916F, 189], the same question was involved. In holding that a lessee from the state of submerged lands, used

as an oyster bed, could not recover for damage thereto caused by the discharge of sewage into Hampton Creek, which was a large navigable body of salt water, the court said: "Since the state holds its tidal waters and the beds thereof for the benefit of all the public, we are of opinion that the city of Hampton has the right to use the waters of Hampton creek for the purpose of carrying off its refuse and sewage to the sea, so long as such use does not constitute a public nuisance, and as such be discontinued by the legislature, which has control over the extent to which these waters may be so used. The sea is the natural outlet for all the impurities flowing from the land, and the public health demands that our large and rapidly growing seacoast cities should not be obstructed in their use of this outlet, except in the public interest. One great natural office of the sea and of all running waters is to carry off and dissipate, by their perpetual motion and currents, the impurities and offscourings of the land. The owner of any lands bordering upon the sea may lawfully throw refuse matter into it, provided he does not create a nuisance to others. And there can be no doubt that public bodies and officers, charged by law with the power and duty of constructing and maintaining sewers and drains for the benefit of the public health, have an equal right."

■ It follows from the principles we have stated that defendant was entitled to an award in the amount of his damage resulting from the severance of the easement from the remainder of his land (which he received), and also for the depreciation in value of his land caused by the construction and operation of the improvement as proposed, and that in fixing the amount of the damage it was proper that the jury should consider (as it was allowed to do) the detriment caused by the existence of the sewer conduit through defendant's land and the manner in which the conduit would be maintained and operated upon the land taken. ■ But any damage attributable to the mere fact that plaintiff has located its sewer outlet in the ocean in proximity to defendant's land is *damnum absque injuria,* and any detriment which may be suffered by defendant in the future, occasioned by the wafting of odors from the sewer shoreward, or from the pollution of his beach lands through the use of the sewer, not discharged from that portion which crosses his land, may not be recovered in this action by way of damages to

his land. The supposition that the sewer will be operated so as to become a nuisance is immaterial to the issue of damages for the taking of the land; it is a question to be settled in another action after the nuisance is alleged to have come into existence. (*City of Pasadena* v. *Stimson, supra; Oregon-Washington R. & Nav. Co., supra.*) It will be readily seen that this is a rule of necessity. It would obviously be impossible to determine, with a reasonable degree of certainty, what conditions may be created along the seacoast by the deposit of sewage at a point a mile off shore.

 We conclude, therefore, that the court correctly excluded the offered evidence as to the possible defilement of the atmosphere and the beach caused by the action of the winds and waves upon the effluent to be deposited at sea.

 Another ruling of the court, upon which appellant relies for a reversal, is one in which the court struck out certain of the testimony of plaintiff's witness, H. A. Laffler, who duly qualified as an expert, in which he gave it as his opinion that the remaining land of appellant would be depreciated in value in the amount of $408,630 by reason of the location, maintenance, operation and construction of the sewer in the manner proposed by respondent. Respondent moved to strike out all of the testimony of the witness with respect to damage to the remaining lands upon the ground that the opinion of the witness as to the amount of damage was based upon matters of conjecture and speculation, and upon other grounds. This motion was granted and the jury was directed to disregard the testimony of the witness as to severance damage in said amount of $408,630. Thereupon the defendant offered to prove, by the opinions of two other witnesses, damages in a large amount and of the same character as testified to by the witness Laffler. It was stipulated that said witnesses were qualified and that they would testify in all respects the same as the witness Laffler; that objection would be made upon the grounds upon which the court struck out the testimony of Laffler, and that the testimony of these witnesses would be excluded by the court.

The basis of the opinion of the witness Laffler as to the severance damage given on direct examination may be briefly stated as follows: that the land as a whole was valuable for recreational purposes, for a golf club, a club house, a bathing and beach resort, and for residential purposes; that the con-

struction of the sewer would require some two years, during which time the land would be identified in the public mind as having an outfall sewer extending through it; that this publicity would be conveyed to possible and prospective buyers; that the favorable impression as to beauty and desirability of the section would be dispelled and leave play for a widespread unfavorable impression because of the construction of the sewer, and that this unfavorable impression would extend beyond possible buyers of the land as acreage to purchasers of parcels thereof after its subdivision and development.

The damage estimated by the witness was 30 per cent of the value of the remaining land. In discussing this testimony we think we may fairly assume that the gist of it is found in the following statement: ''When White Point is mentioned I can see that the public will say, 'O yes, that is where the county is building that big outfall sewer', and in that particular state of mind on the part of a large number of people, including possible prospective buyers, I can see there is a very great damage, which I place at $408,000.'' This figure, he stated, was simply a matter of judgment based upon his experience, the magnitude of the project and the publicity it would receive over a period of two years, which he believed made a depreciation of 30 per cent a very conservative one.

In proving damage, defendant had the unquestioned right to show by competent evidence the market value of the remainder of his land without the improvement and its value as affected by the improvement. (*Southern Pac. R. R. Co. v. Hart,* 3 Cal. App. 11 [84 Pac. 218].) But the provable damage by the improvement is limited to that caused by the part of the improvement constructed on his land. He may not recover in this action because of the fact that the sewage is to be discharged into the sea in front of his land or because of the manner in which it may be discharged. If the land value is to be depreciated for these reasons it is *damnum absque injuria* for all of the purposes of this action. The witness evidently had this fact in mind, for he stated, ''I have not taken into consideration the extension into the ocean or the amount of sewage or any elements of that character.'' The damage would be the same, he stated, if construction should be stopped at the water's edge and the sewer should not be used. The entire damage would result from publicity given to the matter during the period of construc-

tion. He placed particular emphasis upon the supposed fact that it would be referred to in such a way as to identify it with a location on defendant's land called "White's Point". A brief analysis of the basis of the opinion as to values will show it to be wholly intangible and fanciful. The damage to the land, as the witness visualized it, would not come from the fact that the sewer would be there and discharging its content into the ocean, but from the fact that it would be discussed by many people who would thereby become prejudiced against the locality. He did not attribute damage to the actual construction work upon the tunnel or excavation, nor did he claim that the mere existence of the deeply buried conduit would result in any measureable damage to the tract as a whole. But he undertook to attribute to the publicity the project would receive, apart from the fact of the discharge of sewage, a 30 per cent depreciation in property values. If detriment comes to defendant's land it will come alone from the use of the sewer and the proximity of the outlet. Manifestly these are the considerations that would influence prospective buyers. Since damage from this source is not recoverable in this action, if it is recoverable at all, we find nothing in the stricken testimony that would support a tangible claim for damages. The testimony stricken out was fully as speculative and conjectural as that held inadmissible upon the same grounds in *Coast Counties Gas & Electric Co.* v. *Miller & Lux, etc.*, 118 Cal. App. 140 [5 Pac. (2d) 34], and *County of Los Angeles* v. *Signal Realty Co.*, 86 Cal. App. 704 [261 Pac. 536]. An award of damages based upon the quoted testimony of the witness Laffier would be a departure from the sound and just rule that damages must be established with reasonable certainty and may not be purely speculative as to amount or remote as to origin. Where it is problematical whether recoverable damage exists or has been proven, no award can be made.

We are satisfied that the rulings of the court were correct and that defendant was allowed to prove all of his recoverable damage.

The points we have disposed of are the only ones urged by appellant. It is unnecessary to discuss additional argument of respondent in support of the rulings of the court.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.