[Civ. No. 8220. Third Dist. June 26, 1953.]

THE PEOPLE, Respondent, v. FRANCES B. ADAMSON, Appellant.

MacBride & Gray for Appellant.

Robert E. Reed, Harry S. Fenton, Warren P. Marsden and Russell S. Munro for Respondent.

SCHOTTKY, J.—Respondent filed an action in eminent domain for the purpose of acquiring for a state highway and, in particular, a freeway, 8.02 acres of unimproved land and certain abutter's rights of access owned by appellant. The property sought to be condemned is located easterly of Roseville, outside of the city limits, and will accommodate the new freeway which will by-pass that city. The 8.02 acres of land being condemned is a part of a large parcel of land consisting of more than 280 acres which appellant had purchased in 1945 for $17,000, including a six-room house, barn and other buildings. No buildings are located on the portion of said land being condemned, and at the time of the trial the portion of the property being condemned and the remaining property of appellant were being used for ranch purposes

At the time the condemnation action was filed appellant's property enjoyed access to Sunrise Avenue and to Rocky

Ridge Road, only. The proposed freeway is on an entirely new alignment and had not been constructed at the time of the trial. The rights of access acquired in the condemnation action were appellant's existing rights of access to Rocky Ridge Road and Sunrise Avenue.

The case was tried before a jury. J. N. Stanley, a registered civil engineer employed by respondent, testified as to the extent of the property being taken and the nature of the construction of the improvement in the manner proposed by respondent. Maps showing the general route of the new freeway, the entire ownership of appellant at this location, and the planned construction of the improvement by respondent, were explained by Mr. Stanley, who was cross-examined thereon by counsel for appellant, and the maps were introduced into evidence.

Three valuation witnesses testified on behalf of appellant. Mr. Leineke testified that the value of the part taken was $16,040, the damage to the remainder was $22,046, or a total of $38,086. Mr. Festerson testified that the value of the part taken was $20,050, the damage to the remainder was $17,125, or a total of $37,175. Mr. Minard testified that the value of the part taken was $20,000, the damage to the remainder was $17,000, or a total of $37,000. Appellant herself, as the owner of the property, also testified as to the value of her property.

Three valuation witnesses testified on behalf of respondent. Mr. Pugh testified that the value of the part taken was $2,885, the damage to the remainder was $2,012, or a total of $4,897. Mr. Royer testified that the value of the part taken was $2,807, the damage to the remainder was $1,799, or a total of $4,606. Mr. Nagel testified that the value of the part taken was $2,406, the damage to the remainder was $1,350, or a total of $3,756. Both the judge who presided at the trial and the jury viewed the property being condemned and appellant's remaining property; and the nature of the construction on the ground was by stipulation pointed out to them by respondent's engineering witness, Mr. Stanley.

The jury returned a verdict awarding appellant $2,807 for the 8.02 acres of land condemned, and $2,012 for damage to the remainder of appellant's property by reason of its severance from the part sought to be condemned and the construction of the improvement in the manner proposed, or a total award of $4,819. Judgment was entered in accordance with this verdict, and thereafter appellant's motion for a new trial

was denied by the trial court. Appellant has appealed from the judgment and from the order denying her motion for a new trial.

Appellant contends that the judgment and order should be reversed and urges as grounds for reversal that the court erred in admitting a certain letter in evidence and also erred in refusing to give certain instructions offered by her. We shall discuss these contentions in the order of their statement.

Tom J. Pugh was called as a witness for respondent and testified fully on direct examination as to the value of the property taken and also as to the amount of severance damages. Appellant did not cross-examine him at all on the issue of value but sought to impeach his credibility by showing bias, interest and prejudice. Appellant elicited from the witness Pugh testimony that before the filing of the instant action the witness was a member of the Placer County Planning Commission when appellant had submitted a proposed subdivision map of her property to that body and that he had either made or supported a motion to have said map rejected and sent or referred to the State Division of Highways. Respondent objected to the introduction of this testimony but the court overruled the objection under the well-settled rule that testimony from which inferences of interest, bias or prejudice may be drawn is properly admissible to impeach a witness. (27 Cal.Jur., Witnesses, §§ 9, 96, 97, 106, 107; Code Civ. Proc., § 1847.)

Upon redirect examination of the witness Pugh, respondent offered in evidence a letter dated August 23, 1949, from the State Division of Highways to the Placer County Board of Supervisors, and reading as follows:

"Gentlemen:

"As you were advised by our letter of September 7, 1948, the State of California is planning to realign the State highway from 1 mile south of Roseville to ½ mile east of Roseville, as shown on the attached route map.

"Construction of this project is at least two years in the future. Right of way over a portion of the new alignment has already been acquired and the balance will be purchased over the next two years.

"In order to avoid conflict with any possible development in the area that we might not know of, which could not only increase the cost of the right of way, but also result in damage to private property, it will be appreciated if you will ad-

vise us of any planned development that is brought to your attention, both now and in the future.

"Early notification of any such conflicting development will enable us to contact the parties concerned and work out our problems to the best interests of all concerned.

> "Yours very truly,
> "C. H. WHITMORE
> District Engineer
> By Gilbert Mulcahy
> District Right of Way Agent"

"GM :hw
CC :JPM
HFS"

Appellant objected to the introduction in evidence of this letter, first upon the ground that no foundation had been laid and also upon the ground that it was hearsay, but the court overruled appellant's objection and the letter was admitted and read to the jury. Appellant now argues that the court erred in admitting it and that she was prejudiced by such ruling.

There is no merit in this contention. ▇ Appellant had on cross-examination attacked the credibility of the witness Pugh and to show his alleged interest, bias and prejudice brought out the fact that while a member of the Placer County Planning Commission he had suggested that a proposed subdivision map of appellant's property which had been filed with the commission be sent to the State Division of Highways. In view of the fact that Pugh was later a witness for the state as to the value of the property, appellant was of course entitled to bring out this fact, and to assert that it showed the interest, bias and prejudice of the witness. ▇ But appellant having been permitted to do so, it was certainly proper for respondent to elicit from the witness that the map was sent to the Division of Highways because of the letter written by them to the Placer County Board of Supervisors. ▇ For as stated in 27 California Jurisprudence, Witnesses, § 151, page 177: "If a party introduces evidence which tends to impeach a witness of his opponent, the latter may in rebuttal offer evidence to support his witness' credibility." (See, also, Code Civ. Proc., § 1870, subd. 16.)

▇ The original letter in the files of the Placer County Board of Supervisors was offered in evidence and the objec-

tion was made that the genuineness of the document was not shown. The court overruled the objection and it was stipulated that a copy be substituted for the original. The letter in question was received by the board of supervisors and placed in its files, and according to Wigmore the authentication of a document is not necessary when the execution of it is not in issue, but only the fact of the existence of a document of such tenor. VII Wigmore, Evidence, section 2132; *Pulsifer* v. *Walker*, 85 N.H. 434 [159 A. 426, 81 A.L.R. 1052]. Here the respondent apparently sought to prove only the existence of a document of such tenor, and that same was known to the witness, Mr. Pugh. The purpose of this was to attempt to establish that Mr. Pugh acted pursuant to this letter in having appellant's subdivision map referred to the Division of Highways, and thereby to reestablish the credibility of the witness, Mr. Pugh, in the eyes of the jury by negativing any inference of bias, interest, or motive on the part of him in testifying in this action on the issue of value and damages. The authenticity of the letter would seem to have no bearing on its intended use. Whether it be genuine or a forgery, it was merely offered to show that Mr. Pugh was motivated by it in his actions.

Furthermore, even if the court erred in admitting the letter, it is difficult to understand how it could constitute prejudicial error. Appellant argues that she was prejudiced because the verdict of the jury indicated that the testimony of the witness Pugh was followed closely by the jury in its verdict. However, the record shows that two other witnesses for respondent placed a lower valuation on the property than did Pugh. The jury was correctly and fully instructed as to credibility of witnesses and the weighing of testimony, and it was for the jury to decide what weight should be given to the testimony of the various witnesses.

Appellant next contends that the court erred in refusing to give her instruction 13A which reads as follows:

"You are instructed that the rights of defendant to access to the outer highway are determined in this proceeding and cannot be decreased, but you are further instructed that said outer highway will be connected to the freeway only at such points as may be established by public authority and that this discretionary right of public authority referred to may be considered by you in determining the damages accruing to defendant by reason of the severance and the construction and use of the improvements in the manner proposed by the State of California."

Section 1248 of the Code of Civil Procedure, pertaining to what must be ascertained and assessed in condemnation suits, provides, in part, as follows:

"The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

. . . . . . . . . . . . . .

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff."

By the resolution of the California Highway Commission. the proposed outer highway was to be connected to the proposed freeway at a certain point. This outer highway could later be connected only at such points as established by public authority. Appellant argues that this discretionary right in the public authority later to change the point of connection between the outer highway and the freeway is an element to be considered in ascertaining damages accruing by reason of the severance and construction of the improvement. Appellant contends that the point of connection might be changed at a later date causing additional damage, and that, therefore, the jury should have been given the instruction 13A.

In the instant case the proposed manner of construction was testified to in detail by respondent's engineering witness, Stanley, including the connection of the outer highway to the freeway.

A map, plaintiff's Exhibit 5, showing the manner of the connection of the outer highway to the freeway, was explained by this witness, and the map was introduced into evidence without objection. Appellant concedes that the connection testified to by Mr. Stanley, as shown in plaintiff's Exhibit 5, is the construction in the manner proposed by respondent. There was no evidence by any witness as to any proposed connection at any other location, nor was there any evidence that a change, even if made, would damage appellant's remaining property. It is clear that whether or not a change in the point of connection will ever be made is purely conjectural and speculative, and there is also no evidence that appellant would be injured by any change that might be made. Therefore, the question of any future damage by some change which

may or may not be made in the future would be purely conjectural and speculative, and the following statement made by the trial court in refusing to give said instruction was fully justified: "And I am not going to give the Instruction 13-A. I think it is objectionable, as being conjectural. No one knows whether that is going to happen, and, if it does, whether it is going to be a detriment or whether it isn't."

■ While it is true that in an eminent domain proceeding damages must be assessed once and for all and must include all damages, present and prospective, that might be inflicted by the condemning authority (*East Bay Municipal Dist.* v. *Lodi,* 120 Cal.App. 740 [8 P.2d 532], and cases cited therein; *County Sanitation Dist. No. 2* v. *Averill,* 8 Cal.App. 2d 556 [47 P.2d 786]), such assessment of damages may not be based on remote, conjectural or speculative damages. (*City of Los Angeles* v. *Geiger,* 94 Cal.App.2d 180 [210 P.2d 717], and cases cited therein.)

Appellant seems to fear that the point of connection between the outer highway and the freeway may be changed in the future, and that in that event she would be precluded by the instant action from bringing an inverse condemnation proceeding to recover additional severance damages to her remaining property. ■ However, it is the law of this state that damages not necessarily included in the issues in a condemnation action may be recovered in a subsequent action. (*County Sanitation Dist. No. 2* v. *Averill, supra; Janssen* v. *County of Los Angeles,* 50 Cal.App.2d 45 [123 P.2d 122]; 10 Cal.Jur., Eminent Domain, § 113; 18 Am.Jur., Eminent Domain, § 369.)

In *County of Los Angeles* v. *Rindge Co.,* 69 Cal.App. 72, the court said at page 81 [230 P. 468]:

". . . Although perhaps the precise point has not been decided in this state, we perceive no good reason why additional compensation might not be recovered, after a prior award in a condemnation proceeding, upon proof being made that by reason of changes made in the improvement as actually constructed, damages were incurred which were not taken into account and could not properly be taken into account in the assessment of damages made by the jury in the trial of the condemnation suit."

Since the decision in the Rindge case, *supra,* any doubt as to whether or not damages may be recovered for subsequent changes in street or highway construction has been dispelled by our Supreme Court in the following cases: *Rose* v. *State,*

19 Cal.2d 713 [123 P.2d 501]; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818]; *Beals* v. *City of Los Angeles,* 23 Cal.2d 381 [144 P.2d 839]. In all of these cases the right to recover such damages in inverse condemnation proceeding was upheld.

The record shows that counsel for respondent conceded at the trial that damages for a connection at any other location could be awarded in a subsequent action if there were a changed manner of construction which caused legal damage to appellant's remaining property. At the trial appellant's counsel sought to obtain a stipulation that the connection would forever remain at the location shown in plaintiff's Exhibit 5, and respondent's counsel stated:

"I am certainly not going to enter into any stipulation that would tie our hands in the future. It seems clear enough to me that if the connection was ever changed Mrs. Adamson would have an inverse condemnation against us, if the property was actually damaged."

Furthermore, the court, in order to remove any doubt as to what was included, inserted in its findings of fact, the interlocutory judgment, and the final order a statement that the connection of the outer highway to the freeway has been designated by the plaintiff, the public authority in charge thereof, at the location shown on plaintiff's Exhibit 5 in evidence in this proceeding, "and that the connection at this location is a part of the construction of the highway in the manner proposed by the plaintiff herein."

We are convinced that the trial court correctly determined that appellant's proposed instruction 13A should not be given to the jury.

Appellant next contends that the court erred in modifying her proposed instructions Nos. 23 and 24. Said instructions, as offered by appellant, read as follows:

*Instruction 23.* "The Court instructs the jury that after the jury has ascertained and assessed the value of the land, sought to be condemned, the jury must then ascertain and assess the amount of damages, if any, that will accrue to the lands of defendant as described in her answer not sought to be taken, by reason of its severance from said portion sought to be taken and the construction of the improvement in the manner proposed by the plaintiff, *and the use of said improvement thereafter.*

"This damage, if any, is usually referred to as severance damage and is to be ascertained and assessed by the jury as directed in the next instruction."

*Instruction 24.* "The Court instructs the jury that the property sought to be condemned and taken in this case is only a part of a larger parcel of land belonging to the defendant; that the sole function of the jury is to ascertain and assess the compensation that is to be paid by the plaintiff to the said defendant, namely, first, the value of the property actually taken, and all improvements thereon, if any, pertaining to the realty, and, secondly, the damages, if any, that will accrue to the portion of the land not sought to be condemned and taken by reason of the severance thereof from the portion condemned and taken, and the construction *and use* of the improvement in the manner proposed by plaintiff. This damage, if any is an element of the just compensation guaranteed to the owner."

Said offered instructions were given as submitted with the exception of the italicized portions. Appellant contends that it was error for the court to omit the words "and the use of said improvement thereafter" from instruction 23 and the words "and use" from instruction 24.

However, instructions 27, 28, 29 and 31 proposed by appellant and given by the court seem to have adequately covered the question of the proposed "use" of the land condemned as bearing on the question of severance damages. For instruction 29 reads in part as follows:

"If you find that by taking the right of way *for the use* described in the complaint, damages will result to the property that is not taken, then it is your duty to consider . . . and in so far as you may find that any of such conditions depreciate the market value of the property and are the result of the taking *and use of the property which the plaintiff seeks to condemn,* you will award the defendant damages therefor." (Emphasis added.)

Instruction 27 reads as follows:

"You are instructed that the defendant is entitled to recover not only for the damages to the lands not taken by reasons of its severance from the portions sought to be condemned, but are also entitled to damages, if any, to the portion not taken by reason of the construction of the improvements in any manner consistent with *the use proposed by the plaintiff.* Determination of such damages is exclusive with the jury." (Emphasis added.)

Instruction 31 reads in part as follows:

"If you find that by taking the right-of-way *for the uses and purposes for which it has been condemned by the State,* damage will result to the larger tract or parcel of which the portions sought for a right-of-way is a part, then you will consider the dimensions and location of the tract or parcel sought to be condemned for the right-of-way, *the purpose for which it is to be used,* . . . for the purpose of determining the market value of the portion of the larger tract not taken to ascertain the damage, if any, to the part not taken." (Emphasis added.)

And instruction 28 reads as follows:

"You are instructed that in determining the damage, if any, to the lands not taken, you are to take into consideration *all the facts and circumstances established by the evidence in this case,* bearing upon the extent of such damages." (Emphasis added.)

It is clear, therefore, that appellant suffered no prejudice from the modification by the court of instructions 23 and 24. Moreover, a reading of all of the instructions given by the court convinces us that the jury was fully and correctly instructed on all phases of the law applicable to the case. As we said in *Huston* v. *Schohr,* 63 Cal.App.2d 267, at page 277 [146 P.2d 730] : "A court is not required to give all instructions requested by the parties, but is only required to instruct the jury fully and fairly as to the law applicable to the case."

While not raising the point that the evidence was insufficient to support the verdict and judgment, appellant does assert that the damages awarded her "are far less than contemplated by law and are unfair and a denial of justice." There was, to be sure, a wide disparity between the amounts of damages testified to by appellant's witnesses and the amounts testified to by respondent's witnesses, and this presented an issue of fact which was determined by the verdict of the jury. Issues of fact are determined in the trial court. The record in the instant case is singularly free from error. The trial was presided over by an experienced and able trial judge who heard the testimony of the witnesses and also viewed the property. The trial court which had the power to weigh the evidence in passing upon appellant's motion for a new trial (a power which we as an appellate court

do not possess), denied the motion. Both the judgment and the order denying the motion for a new trial are abundantly supported by the record.

The judgment and order are affirmed.

Van Dyke, P. J., concurred.