Filed 7/11/14  P. v. Carter CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C073126 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F07391) |
| v. | |
| NATHANIEL JAMES CARTER, | |
| Defendant and Appellant. | |

Defendant was convicted of first degree murder with the special circumstance that the murder was committed while engaged in the crime of robbery.  The jury found true the allegations that defendant committed the murder while armed with a firearm, and that he personally used and discharged the firearm causing death.  Defendant was also convicted of attempted robbery, and the jury found that in the commission of that crime he was armed with a firearm and that he discharged the firearm causing death.  The trial court sentenced defendant to life without the possibility of parole.

Defendant argues the trial court erred in admitting evidence that two of the eyewitnesses had been threatened.  We disagree and shall affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

A detailed recitation of the facts is unnecessary in light of the issues on appeal. The victim, Steven Carmassi, was a grower, processor, and distributor of marijuana. He was robbed and killed in the parking lot of a supermarket by defendant and Latice Collins, who were driven to the scene of the crime by Collins's girlfriend, Dejohng Taylor.

Defendant and Collins enlisted the aid of 16-year-old D.H. in the planned robbery. She agreed to distract Carmassi while defendant and Collins ambushed him. However, D.H. was a friend of Carmassi's, and she and her 15-year-old friend Kayla T. agreed between themselves to warn Carmassi. Before D.H. and Kayla T. could reach Carmassi, they saw defendant and Collins accost him as he sat in his truck, heard gunshots, and watched Carmassi drive his truck away, eventually crashing into several automobiles and a building. Carmassi died of a gunshot wound.

It was stipulated that there were no fingerprints or DNA evidence linking defendant to the crime scene.

Both D.H. and Kayla T. testified at trial. They were afraid to testify because they had received threats.

DISCUSSION

Defendant argues the trial court erred in admitting evidence that D.H. and Kayla T. had been threatened because such evidence was inadmissible and prejudicial. With respect to the threat D.H. saw on Facebook, defendant argues the evidence was not properly authenticated.

A. The Evidence of Witness Threats was Admissible

Defendant argues the evidence of threats to the witnesses was inadmissible because it was irrelevant and because it was hearsay.

Defendant's argument that such evidence is not relevant unless the witnesses' testimony was affected by the threat, or the testimony favored the defendant, is contrary

2

to the Supreme Court's pronouncements regarding the relevance of such evidence. Most recently, in *People v. Chism* (2014) 58 Cal.4th 1266, the court explained that such evidence is relevant to witness credibility. " 'Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible.' (*People v. Burgener* (2003) 29 Cal.4th 833, 869 (*Burgener*); see generally Evid. Code, § 780.) Evidence of any explanation of the basis for such fear is likewise relevant to the jury's assessment of the witness's credibility and admissible for that nonhearsay purpose, but not for the truth of any matters asserted. (*Burgener,* at p. 869.)" (*Id.* at pp. 1291-1292.)

" '[E]vidence that a witness testifies despite fear is important to fully evaluating his or her credibility. [Citation.] The logic of this rationale does not hinge on whether the witness gave prior inconsistent testimony.' [Citation.] Thus, in order to introduce evidence of the witnesses' fear, the prosecution was not required to show that their testimony was inconsistent with prior statements *or otherwise suspect*." (*People v. Valdez* (2012) 55 Cal.4th 82, 135-136, italics added, fn. omitted.) "[R]ecantation or inconsistent testimony is not a prerequisite for the admission of evidence of a third party's threat or a witness's fear . . . ." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1087.)

We thus reject defendant's claim that the threats were irrelevant and therefore inadmissible unless there was evidence the witnesses' testimony was affected by the threats.

Defendant's related claim that the threats were hearsay is meritless because the evidence was not offered for its truth. (*Burgener, supra,* 29 Cal.4th 833, 869.)

B. The Facebook Page Was Properly Authenticated

Defendant claims that the evidence of the threat to D.H. on Facebook should not have been admitted because it was not properly authenticated. He argues it was not authenticated because there was no testimony as to how the file was created or printed,

3

because no Facebook employee testified regarding the file on its servers or who might have had access to the Facebook site, and because there was no testimony from the person who created the page or the people who posted remarks. Defendant mistakes the nature of authentication in the context of this situation.

This case is similar to *People v. Adamson* (1953) 118 Cal.App.2d 714, an eminent domain proceeding. There, the trial court admitted a letter from the State Division of Highways to the Placer County Board of Supervisors requesting early notification of any planned development that would conflict with a proposed highway project. (*Id*. at pp. 718-719.) The letter was admitted to show that Pugh, the People's witness as to value, was not biased. The letter was intended to rebut testimony that Pugh had voted as a member of the county planning commission against an earlier subdivision map application by the landowner, and had supported sending the map to the State Division of Highways. (*Id*. at p. 718.)

In rejecting the landowner's claim that the trial court erred in admitting the letter because the letter was not authenticated, this court explained that the purpose in admitting the letter was to show the existence of the document, and that it had been known to Pugh. (*People v. Adamson, supra*, 118 Cal.App.2d at p. 720.) The purpose was to establish that Pugh acted pursuant to the letter when he voted to refer the map to the Division of Highways, and by so doing to show that Pugh's opinion of the value of the property was not tainted by bias against the landowner. (*Ibid*.) Under these circumstances, there was no requirement to authenticate the execution of the document, when the execution was not in issue. (*Ibid*.)

Here, likewise, the purpose of the document was to show that D.H. was threatened, and was testifying in spite of the perceived threat. The authentication of a document is sufficient if the evidence shows the document is the writing that the proponent of the evidence claims it is. (Evid. Code, § 1400.) In the context of this case, it was not necessary for the prosecution to prove who wrote the Facebook post, or how

4

the post was created, or that it had been changed since the original posting. It was only necessary to show that the document submitted into evidence was the threatening post D.H. had seen on her computer. This was accomplished when D.H. was shown a copy of the Facebook posting, which she said she recognized as the threatening post she had seen on the Facebook pages belonging to the mother and sister of Taylor. Because the document was relevant only to show that D.H. saw the Facebook post and felt threatened by it, the only authentication necessary was proof that the document admitted into evidence was a copy of what she had seen on her computer.

Defendant argues the execution of the Facebook post was at issue because of the implication that someone connected to him had posted the threat. In fact, there was no indication the threat was associated with defendant. D.H. testified that the threat was on the Facebook pages of Taylor's relatives, not defendant's. Moreover, the trial court told the jury there was no evidence that defendant directed the threats, and that it could not consider the threats to be consciousness of guilt on the part of defendant.[1]

C. The Evidence Was Not Unduly Prejudicial

Defendant claims the evidence was unduly prejudicial because the threats were linked to his friends and relatives. As explained above, the threats to D.H. on Facebook were not linked to defendant, but to Taylor. D.H. testified that other people came to her house and threatened her, but none of the people who came were related to defendant.

---

[1] Here, and in his other claims, defendant contends the asserted error violated his state and federal constitutional rights to due process and a fair trial. Defendant's claim is that the trial court's admission of the evidence was error, and had the additional legal consequence of violating the Constitution. "[R]ejection, on the merits, of a claim that the trial court erred on the issue actually before that court necessarily leads to rejection of the newly applied constitutional 'gloss' as well. No separate constitutional discussion is required in such cases, and we therefore provide none." (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.)

She stated the only person she was frightened of was defendant, and he never came to her house.

The threats Kayla T. received were delivered by phone and in person. Some of the calls were from restricted numbers, so she did not know who was calling. Some of the calls were from people she knew, and all of those people were associated with Taylor. Only one of the people threatening Kayla T. in person, defendant's brother, was related to defendant. Kayla T. testified defendant's brother asked her what she had said to police about defendant. When Kayla T. told him she did not snitch on his brother, he shook his head and told her he knew where she lived.

As with D.H.'s testimony, the trial court told the jury there was no evidence defendant directed the threats, and that the threats were not to be considered as evidence of defendant's consciousness of guilt, but only to evaluate Kayla T.'s state of mind.

Evidence Code section 352 gives the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ." Undue prejudice is " 'evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) We will not disturb the trial court's exercise of discretion unless it acted in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (*People v. Holford* (2012) 203 Cal.App.4th 155, 168.)

The threat evidence was not highly prejudicial to defendant because it was not closely associated with defendant. The evidence was relevant to the witnesses' credibility, and the credibility of the eyewitnesses was particularly important in this case, since there was no physical evidence linking defendant to the scene of the crime. We conclude the trial court properly weighed the possibility of prejudice against the

evidence's probative value. The trial court acted well within its discretion in admitting the evidence.

The abstract of judgment shows a suspended parole revocation restitution fine of $10,000. Defendant claims the fine was unauthorized because he was sentenced to life without the possibility of parole. The trial court did not orally impose a parole revocation restitution fine, and no such fine is recorded in the minutes. The People agree to have the abstract modified to conform to the trial court's oral pronouncement by striking the parole revocation restitution fine. We shall direct the trial court to strike the fine.

DISPOSITION

The judgment is affirmed. The trial court is directed to modify the abstract of judgment to strike the parole revocation restitution fine pursuant to Penal Code section 1202.45, subdivision (a) and forward a certified copy to the Department of Corrections and Rehabilitation.


    BLEASE          , Acting P. J.


We concur:


    ROBIE          , J.


    DUARTE        , J.